## In re SIMON.

(District Court, W. D. New York. June 10, 1912.)

No. 3,802.

BANKRUPTCY (§ 138*)—PROPERTY PASSING TO TRUSTEE—MONEY GIVEN TO WIFE.

· Where a wife, during the 12 years of her marriage, by doing her own work saved from the allowance made her by her husband for household expenses a considerable sum, which she deposited in bank in her own name, besides on different occasions expending sums amounting to several hundred dollars, which fact was in all probability known to her husband, the presumption is that he intended such savings as a gift to her; and, where he was solvent at all times until his death, the trustee for the surviving partner of a firm in which he was a partner, on its bankruptcy after his death, cannot claim such money.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193–204, 206–209; Dec. Dig. § 138.*]

In the matter of M. C. Simon, individually and as surviving partner of the firm of Ely Meyer & M. C. Simon, bankrupt. On review of decision of special master. Reversed.

See, also, 197 Fed. 105.

Clarance W. McKay, of Rochester, N. Y., for trustees.
Wile & Oviatt, of Rochester, N. Y., for Rae S. Meyer.

HAZEL, District Judge. The special master decided that the sum of $4,000 deposited in banks in Rochester, N. Y., to the credit of Rae S. Meyer, should forthwith be paid to the trustees of the bankrupt estate. The right to decide this controversy in the bankruptcy court was stipulated in writing, and, though claiming title to the fund, Mrs. Meyer expressly submitted her rights or interests therein for decision to the special master on the testimony taken in the proceedings had in opposition to the discharge of the bankrupt.

Two points were argued at the bar: First, that the trustees in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bankruptcy were not entitled to the fund, even though the claimant had possession thereof as agent for her husband, on the ground that the adjudication did not draw into the bankruptcy proceeding the assets of a deceased member of a partnership; and, second, that as the fund to which the trustees laid claim was in the possession of the claimant—the wife of the deceased partner of the bankrupt—the presumption therefore arose that she was the owner thereof. The latter contention will first be considered and determined.

When this proceeding was instituted, it was claimed by the trustees that the said fund constituted partnership assets which had been placed in the custody of the claimant by the bankrupt Simon and concealed from them. Later, however, upon examination of the claimant in the bankruptcy proceeding, it developed that she had accumulated the amount in controversy out of an allowance of $75 per week for maintenance and household expenses, made to her by her husband during the 12 years of their married life. In her testimony, omitting nonessentials, she substantially says:

"This was my personal money, which I gave to him to deposit for me. * * * It was the money I had accumulated and gathered. I am a great woman for saving. I do all my own work, never keep any help of any kind, and in that way always gathered it up and kept it myself. * * * When I got any money ahead, I put it in my box at the Security Trust Company, and locked it up there. * * * This $4,000 did not come from the estate of Mr. Meyer. It came from my own savings in doing my own work. I was all the years I was married in accumulating this money. I have been married 12 years. * * * Seventy-five dollars was the usual allowance. I got $75 a week prior to my husband's death, and out of that I succeeded in running the house, and in 12 years accumulating $4,000."

It is further shown that at all times the decedent drew $250 per week from the partnership, and that his wife never employed any household servants, but did her own housework; also that she frequently used a portion of the money accumulated to buy different articles, having had occasion to spend at one time more than $500 for "incidentals," and at another time $1,000 "for different bills."

The presumption that the husband was ignorant of her savings, and unaware of her failure to use up the entire sum of money given her from week to week, drawn by the special master from the evidence, is not borne out by the facts. Giving consideration to the testimony of Mrs. Meyer that at various times she expended large sums of money from the accumulation would seem to justify the inference that her husband had knowledge of such expenditures, and realized that the articles were purchased with money which she had accumulated from the weekly allowance. It is not suggested that he objected or remonstrated with her for saving or laying aside such unexpended portions. It is true she testified that he was without actual knowledge thereof; but the circumstances preclude giving her impressions literal effect, and in their entirety would seem to indicate that he knew of her various purchases and their extent, and therefore the presumption obtains that it was his intention to relinquish any claim to unexpended balances. The inference is not inapt that she used such balances with the acquiescence of her husband, and the

elements of implied gift were present. It is not a question here of transferring property or money in fraud of creditors, or during insolvency, and the allowance was wholly free from any suspicions of that nature.

It has been broadly held, as contended by counsel for the trustees, that money saved by a wife from an allowance by her husband for household expenses belongs to him; yet such adjudications proceed upon the theory that the wife is the agent for her husband in the conduct of the household affairs, and that, in the absence of an intention to bestow a gift upon her, a trust relationship is created. But this principle is not applicable to the facts under consideration, as the surrounding circumstances, together with the testimony, negative any trust relationship, and clearly support the implication that any amount saved from the weekly allowance was to be the separate property of the wife. The burden of proof rested upon the trustees to show that the presumptions were to the contrary, and that instead of a gift to the wife a trust relationship was created. In this they have failed.

The rationale of the entire transaction, the station in life of the parties, the solvency of the donor during the entire period, the economy of the wife in performing her household duties and dispensing with the assistance of servants, all point with persuasive cogency to an intention by the husband to relinquish possession, control, and ownership of the various amounts paid the wife and to vest her with title to unexpended amounts. Knowledge that the wife was in the habit of concealing unused sums was not essential to the validity of the gift. In the cases cited by the counsel for the trustees, of which Aaronson v. McCauley (City Ct.) 19 N. Y. Supp. 690, is most directly in point, the holding of the court, that the surplus arising out of the economy of the wife in managing her household remains the property of the husband, doubtless rested upon facts showing that there was no intention to bestow the remainder as a gift upon the wife.

In view of the foregoing, it is obviously unnecessary to decide the first question submitted as to whether the property of a deceased partner, who was not individually adjudicated bankrupt, may be drawn into the bankruptcy proceeding and distributed. The question submitted for review, "Have the trustees in bankruptcy herein title to and the right to reduce to their possession, as against said Rae S. Meyer, a certain sum of money, amounting to $1,544.93, on deposit in the Security Trust Company at Rochester, N. Y., to the credit of Rae S. Meyer, and the sum of $2,455.07, on deposit in the East Side Savings Bank of Rochester, N. Y., to the credit of said Rae S. Meyer?" is answered in the negative.

So ordered.